Dissenting Opinion.
White, J.
I cannot agree with the conclusion of the Court in this case, and express my dissent with much hesitancy, but to my mind the proof in the record is so clear and the law applicable to it so free from ambiguity, that I feel compelled by a sense of duty to state the reasons by which my mind has been convinced that the interdiction should be pronounced.
What is the issue before us ? The Parish Judge of Tensas of his own motion, after reciting that it had come to his knowledge that Scott Watson, a resident of his jurisdiction, who was the owner of large estates, was insane and incapable of managing either his person or property, instituted proceedings for his interdiction. To this proceeding the mother and sister of the defendant intervened and resisted the inter *762 diction. Was the action of the Judge warranted by law ? The question does not in my mind admit of discussion in face of the plain text of 0. C. 391, saying: If the person who should be interdicted has no relations and is not married, or if his relations or consort do not act, the interdiction may be solicited by any stranger or pronounced ex offido by the Judge after hearing the counsel of the person whose interdiction is prayed for, whom it shall.bethe duty of the Judge to name, if one be not already named by the party. The question of procedure being thus determined, what is the fact as to insanity vel non ? To my mind there is no doubt of the overwhelming and uncontradicted proof of insanity. To make this obvious, let us examine the proof in the record. What does that proof show ?
The father of Scott Watson died years ago, leaving a widow and three children. The unfortunate subject of this litigation grew up full of promise ; having been sent to school in Prance he was after a short absence brought back, if not a maniac at least a person of insane mind. What do the witnesses say ? Let us examine the testimony of each and every one, so as to leave no room for misconception.
1. Two physicians appointed by the court to examine him both testify and report him as insane, as incompetent to exercise volition, as utterly incapable of taking charge of his person or property.
2. Alex. Reed, who had been employed to take care of him, describes him as a person of unsound mind, as an insane person, unable to take care of his person and his property.
3. Wm. Watson, who had been employed to take charge of the young man on a trip made by him to Mississippi, describes him as insane, as at times frantic, at others quiet, but never either rational or capable of taking care of his person or his property.
4. Robert Murdock, an old resident of the parish, who has known him from his boyhood, testifies that he is insane and completely incapable of volition.
5. Eli Tullis, who has known him from birth, testifies to the same effect.
6. J. T. Watson, a cousin, describes him as an insane man, never in his moments of partial tranquillity able to take care of his person or property. In speaking of his condition, he says: “ He is perfectly wild at times; he has tried to kill his mother, and she has so told me.” The Parish Judge testifies to the insanity from personal knowledge ; says he was impelled to institute the proceedings from a sense of duty, having seen the young man in an apparently neglected, condition. Such is the proof for interdiction; could it be plainer ? Is it in any way rebutted ? I think not. The mother and sister, who oppose the interdiction, both in their testimony admit the insanity, but think the insane young man will *763 be better eared for by his mother than any other person. T. P. Clinton, Esq., testifies to an interview, or rather a meeting with him ; he mentions him as then reasonably quiet. He concludes his testimony by saying r “ He is certainly incapable of managing his own estate, and requires more supervision than a ten-year old boy.” Such is every particle of testimony in the record. If it does not establish insanity beyond peradventuré, what could prove it ? Whatisthelaw ? “No person above the age of majority who is subject to an habitual state of imbecility, insanity, or madness, shall be allowed to take care of his person and administer his estate, although such person shall at times appear to have the possession of his reason.” O. 0.389. If the defendant be insane, how can the mandatory provisions of the law be avoided without substituting the volition of the judge for the will of the law-maker ? True, the mother does not desire the interdiction, but that her wish or desire ought not to control is rendered, it seems to me, self-evident by keeping in mind the words shall be allowed, already referred to, and by considering that even a stranger may provoke interdiction, if the relatives do not act. But, it is said, if the defendant is in the care of his mother, no interest of his person requires his interdiction. The wise provisions of the Code as I read them are placed on no such narrow basis. They contemplate giving to the unfortunate person who may be bereft of reason the benefit of every safe-guard, without regard to individuals or relationship ; they provide the inflexible and disinterested will of the law, as a shield, as a protection where the natural will no longer exists. Their policy is •obvious, founded in a knowledge of human nature, the result of the accumulated experience of all ages, to obviate all danger of temptation ; they provide that the person whose insanity is such as to render him incapable of taking charge of his person or property is to be directed not by any one or two of his relations who might in any given case be' interested in the perpetuation of this insanity, but that the courts shall with the family meeting guard his person and administer his property. In the present case it may be that the disease is incurable, and that its victim will be happier in the hands of his mother than elsewhere. Does it follow that a decree of interdiction will remove him ? He is the owner of a large and fruitful estate, and the law has wisely and humanely provided that the revenues of the property of the interdict shall be expended in operating his cure or in mitigating his sufferings. The very object of the law in interdicting is to have such revenues applied to these desirable ends under the eye of the court, so that the person who would enjoy the revenues if no interdiction were allowed is not to judge of the necessity of their application. It is for this reason that the books speak of the decree of interdiction as a merciful decree, as one guaranteeing to the sufferer every care and hope of cure, free from the danger *764 which might otherwise flow from the selfishness, the depravity, the interested motives of individuals. Aside, however, from these considerations, the interdiction is in my judgment required to protect the defendant from being defrauded by any misguided exercise of his now diseased will. As by majority the law presumes capacity to contract, so it continues the presumption of capacity until destroyed by the presumption juris et de jure, the decree of interdiction. If to-morrow we were called upon to enforce against the defendant a contract by which he had divested himself of his heritage, would we not with the facts in this record recoil from so doing ? How, however, could we escape it if' we now fail to recognize that disordered will from which incapacity results ? It is from these reasons that Marcadé says the law-maker has said a person deprived of reason “ shall be interdicted,” not only as a benefit to himself, but also as a protection to society, to avoid the pitiable spectacle of courts being made'the instruments of wrong and injustice. Whatever may be the correctness of the foregoing views as to the necessity of interdiction for the sake of the person and the will of the defendant, in my mind they, even if incorrect, would not obviate the necessity of inter" diction. The large estate of the defendant is shown to be in the hands of his step-father, and whilst there is a statement that the real estate appears to be in a flourishing condition, there is nothing whatever to show what is done with its revenues, or what has become of the personal estate, which was very large. This whole estate, both personal and real, in my opinion can and ought to be administered as the law requires. It is said that his mother and sister are his presumptive heirs, and they do not complain, hence there is no reason for judicial action. The law, however, is not so harsh as to consider the light of a darkened mind as gone out forever ; it contemplates the possibility of a cure, and it acts with that object in view. It does not consider an unfortunate sufferer dead by anticipation, so that his heirs can take his property and administer it without bond, without supervision, without responsibility. The presumptive heirs, were such not the case, would be interested in perpetuating the mental disturbance. The mother of the young man has remarried ; at the date of the second marriage the family meeting retained her in the tutorship upon her giving bond as <a dative tutor. Years have gone away, the revenues of the son’s estate have year by year been acquired. How disbursed is a question upon which the record is silent, •and which, in my opinion, should be answered by an account rendered with the formalities required by law. Eor the sake of the defendant for that of his person, his will, and his property, as also for society itself I think the judgment of interdiction pronounced below should be affirmed.
Seencer, J. I concur in the opinion and conclusion of Mr. Justice ’White.